Rachael D. Lamkin (246066)
Lamkin IP Defense
100 Pine St., Suite 1250
San Francisco, CA 94111
(916) 747-6091
RDL@LamkinIPDefense.com

*Counsel for Defendant, Garmin International, Inc.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF TEXAS

## MARSHALL DIVISION

|  |  |
|---|---|
| Rothschild Connected Devices Innovations, LLC ) | Case No.:  2:17-cv-00158-JRG-RSP |
| ) | |
| Plaintiff, ) | **DEFENDANT'S MOTION FOR** |
| ) | **ATTORNEY'S FEES AND OTHER RELIEF** |
| vs. ) | |
| ) | |
| Garmin International, Inc. ) | |
| ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |
| ) | |

Herein, Defendant Garmin International, Inc. ("Garmin") respectfully moves this

Honorable Court for attorney's fees and other relief against Plaintiff Rothschild Connected

Devices Innovations ("RCDI") pursuant to Federal Rule of Civil Procedure ("Rule") 1 and this

Court's inherent authority.

## I.    INTRODUCTION

Plaintiff RCDI is a shell company wholly owned by Leigh Rothschild, one of the most

prolific patent monetizers in the United States.  (*See* Lamkin Decl., ¶¶10-11, Exhs. B, C.)  Of

course, there is nothing illegal about being a patent monetizer and this Court has rightly stated

1

that "[o]rdinarily, the Court does not scrutinize litigants' business decisions or their chosen structures." *Iris Connex, LLC v. Dell, Inc*., No. 2:15-cv-1915-JRG, 2017 U.S. Dist. LEXIS 10146, at *3-4 (E.D. Tex. Jan. 25, 2017).  But in the rare instances where, as here, Plaintiff's litigation conduct bears the "indicia of extortion," a Court may have to issue sanctions.  *See Edekka LLC v. 3balls.com, Inc.,* No. 2:15-CV-585 JRG (LEAD CASE), 2015 U.S. Dist. LEXIS 168610, at *18 (E.D. Tex. Dec. 17, 2015) (*citing Eon-Net v. Flagstar Bancorp*, 653 F.3d 1314, 1326-27 (Fed. Cir. 2011)).  Here, RCDI and its sole owner, Leigh Rothschild, have engaged in at least the following bad faith litigation conduct:

1. The filing of 69 patent litigations with none proceeding to the merits, none proceeding to claim construction, and most—by a long shot—never making it past the pleadings stage;

2. Making an unsolicited, initial offer of $75,000 to settle, well below the cost of litigation, and made before any discussion of sales, royalty, or other legitimizing facts;

3. Knowing misrepresentations to this Court, the Honorable Robert W. Schroeder, III, and the Texas Secretary of State;

4. Refusal to meet and confer in good faith weeks before the filing of a Section 101 motion, contra to this Court's Section 101 Standing Order;

5. The unannounced dismissal of Garmin moments before the filing of its Section 101 motion in order to keep said motion secreted; and

6. The continued assertion of patents known to be invalid (*i.e.*, upon information and belief, RCDI has filed patent litigations after dismissing other defendants upon the successful demonstration of the asserted patents' invalidity or ineligibility.  That is, RCDI is asserting patents it understands to be invalid).

Under these circumstances, this Court has inherent authority to control its docket and

sanction such conduct in a way that preserves the sanctity of this Court and judicial process.   As such, Defendant Garmin respectfully asks this Court for the following relief:

1. An award of reasonable attorney's fees in the amount of $20,500.00; or in the alternative

2. An order granting limited discovery as to RCDI's receiving of any previous Section 101 or other invalidity motions, prompting dismissal and/or settlement; and

3. An Order that Plaintiff RCDI serve this Court's Order upon this Motion upon all Rothschild-entity complaints employing the "principal office" or "principal place of business" language in said complaint.

## II.     AUTHORITY

### A.  This Court Has Jurisdiction Over This Sanctions Motion

Even though RCDI dismissed its Complaint, pursuant to Rule 41(a)(1)(A)(i), before Garmin could file it's a responsive pleading, this Court retains jurisdiction over a motion for sanctions and attorney's fees.  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395-96, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990) ("Like the imposition of costs, attorney's fees, and contempt sanctions, the imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate. Such a determination may be made after the principal suit has been terminated."[1]); *Yesh Music v. Lakewood Church*, 727 F.3d 356, 363 (5th Cir. Tex. 2013) ("voluntary dismissals do not deprive courts of the jurisdiction to award attorneys' fees[.]") (*citing Cooter & Gell*); *Future Motion, Inc. v. Changzhou First Int'l*

---

[1] Regarding a request for Rule 11 sanctions—not present here—"The rule established by *Cooter & Gell* was partially superceded by the amendment of Rule 11 in 1993 to include a "safe harbor" provision."  *De La Fuente v. DCI Telecomms., Inc*., 259 F. Supp. 2d 250, 258 (S.D.N.Y. 2003)

*Trade Co*., No. 2:16-cv-00013-MMD-CWH, 2016 U.S. Dist. LEXIS 136871, at *4 (D. Nev. Oct. 3, 2016) (accord; *citing Cooter & Gell*); *Samsung Elecs. Co. v. Rambus Inc*., 440 F. Supp. 2d 512, 520 (E.D. Va. 2006) ("*Both Willy* and *Cooter & Gell* emphasize that sanction proceedings, whether by way of Rule 11, contempt, the inherent powers of the court, or statute (such as § 285) present collateral issues as to which a district court retains jurisdiction, notwithstanding a dismissal of the underlying case which gave it jurisdiction or even if it did not have subject matter jurisdiction at the outset. And, in both cases, the Supreme Court grounded that conclusion in the need to assure (1) that litigants conduct themselves properly in litigation before the district courts and (2) that the district courts have the power to enforce appropriate conduct by way of sanctions when the litigants deviate from acceptable standards.") (*citing Willy v. Coastal Corp*., 503 U.S. 131 (1992) and *Cooter & Gell, supra*.)

**B.  This Court Has Inherent Authority To Sanction RCDI**

This Court "has the inherent power to sanction conduct".  *Iris Connex*, at *64 (*citing Chambers v. NASCO, Inc.,* 501 U.S. 32, 44, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)).  "The inherent power allows the Court to address 'a full range of litigation abuses' including conduct beyond the confines of this case."  *Id.* (quoting *Chambers* at 46.); *see also Schermerhorn v. Kubbernus* (*In re Skyport Global Commun., Inc.*)*,* 642 Fed. Appx. 301, 303 (5th Cir. Mar. 14, 2016) ("Courts have inherent power to sanction a party that has engaged in bad-faith conduct and can invoke that power to award attorney's fees.") (*citing Chambers*.)

A district court may sanction parties for conduct that occurs in portions of the court proceeding that are not part of the trial itself.  *FDIC v. Maxxam, Inc.*, 523 F.3d 566, 590-91 (5th Cir. 2008) (*citing Chambers*).  The Fifth Circuit has "qualified *Chambers* by emphasizing that its rule allows for sanctions when a party's 'bad-faith conduct,' beyond that occurring in trial, is 'in

direct defiance of the sanctioning court.'"  *Maxxam*, at 591.

### III.    FACTUAL BACKGROUND

RCDI has asserted US Patent No. 8,788,090 (the '090 Patent) sixty-nine times, never to claim construction and never to a determination on the merits.  (Lamkin Decl., ¶¶12, Exh D.)  In fact, the great majority of the RCDI cases have settled or been dismissed before a responsive pleading has been filed.

In its very first communication with opposing counsel, RCDI replied to a request for extension as follows: "We are unopposed to a 30 day extension.  Also, now that I have a contact, I am obliged to let you know that RCDI has an early settlement program, the basics of which are a license in exchange for a one-time payment of 75K.  Please let me know your client's response."  (Lamkin Decl. ¶13, Exh E.)  The offer was made at first communication, divorced from any sales data, and clearly below the cost of any defense.  These are all factors bearing the "indicia of extortion".  *See Edekka LLC v. 3balls.com, Inc.,* No. 2:15-CV-585 JRG (LEAD CASE), 2015 U.S. Dist. LEXIS 168610, at *18 (E.D. Tex. Dec. 17, 2015) (*citing Eon-Net v. Flagstar Bancorp*, 653 F.3d 1314, 1326-27 (Fed. Cir. 2011) (affirming the district court's finding of an 'indicia of extortion' where a plaintiff filed over 100 lawsuits and '[e]ach complaint was followed by a 'demand for a quick settlement at a price far lower than the cost of litigation . . . .'")).

Relevant to this Motion, counsel for the parties then engaged in the following communications: On March 21, 2017, the undersigned sent counsel for RCDI a letter, asking Plaintiff to dismiss Garmin with prejudice and setting forth the reasons for said request, including a detailed Section 101 analysis.  (Lamkin Decl. Exh. A).  The letter explained, "[w]hether or not systems and methods for generating customized products are patent eligible is

a well-trodden question, repeatedly decided in the negative."  The letter cites numerous cases, including this Court's decision in *Clear with Computers, LLC v. Altec Indus.*, No. 6:14-cv-79 (Consolidated Lead Case), 2015 U.S. Dist. LEXIS 28816 (E.D. Tex. Mar. 3, 2015), finding product customization claims to be patent ineligible.  (*Id.*)  In that that same letter, the undersigned asked that RCDI either dismiss Garmin or engage in a meet and confer to discuss the contents of said letter.  Counsel for RCDI did not respond to that communication.  (Lamkin Decl., ¶¶2-3.[2])

One week later, on March 28, 2017, the undersigned sent a follow up email asking counsel for RCDI to respond to her previous communication.  Counsel for RCDI did not respond to that communication.  (Lamkin Decl., ¶¶4-5.)

Nearly two weeks later, on April 3, 2017, the undersigned sent the following email to counsel for RCDI: "As you know, Judge Gilstrap requires that we meet and [*sic*] confer regarding any Alice motion.  Thus far you have chosen to ignore my communications on this subject, which is contra to Judge Gilstrap's Section 101 standing order.  Thus, please, today, engage in a good faith meet and confer with me on this matter.  Judge Gilstrap prefers that we speak over the phone so please set forth your availability today.   If you would instead prefer to communicate in writing, please--today--set forth your response to my letter, including any claim terms you believe need construction, and the constructions therefore.  Thank you."  Counsel for RCDI did not respond to that communication.  (Lamkin Decl., ¶¶6-7.)

On April 5, 2017, the undersigned sent the following email to counsel for RCDI: "I will

---

[2] To reduce the number of exhibits, Garmin has not included all of the emails as exhibits to this Motion, but they are quoted verbatim in the Declaration of Rachael D. Lamkin.  Should RCDI dispute this account, or should this Court request said emails, they will be attached to Garmin's Reply.

be filing the Alice motion at 5:00 (CT) EDTX time **today**. Given your silence, I will assume that

you agree that no claim construction is needed for the Court to adjudicate an *Alice* motion.  To

the extent that you do believe claim construction is needed, please send a list of the terms you

believe need construction and your proposed construction before 5:00 CT.  Thank you."

(emphasis added.)  Only then did counsel for RCDI respond: "RCDI's position is that claim

construction is needed (such that the parties presumably disagree on that issue).  I believe that is

sufficient for the required meet and confer.  We will identify which claim elements need

construction and why (and identify intrinsic references for support) in connection with the joint

submission required within 10 days after filing of the 101 motion." (Lamkin Decl., ¶¶8-9.)

RCDI's last email notwithstanding, and within an hour of when Garmin was set to file its

Section 101 motion, RDCI filed a motion to dismiss Garmin without prejudice.  (D.I. 7.)  RDCI

did not communicate with Garmin about said dismissal, before or after filing.

Given the clear, voluminous, and controlling caselaw detailed in Garmin's March 21,

2017 letter to RCDI—including caselaw from this Court—finding claims indistinguishable from

the claims at-bar patent ineligible under Section 101, and given RCDI's unannounced dismissal

of Garmin moments before a Section 101 motion was to be filed in this matter, the only rational

conclusion to be drawn is that RCDI knows that its patents cannot survive an adjudication on the

merits of a Section 101 motion, and yet RCDI keeps filing meritless nuisance suits.  The use of

this Court for the filing of sixty-nine lawsuits that intentionally avoid adjudication on the merits

should not be tolerated.

To be clear, Garmin is not taking the position that attorney's fees would be appropriate

when, for example, a plaintiff merely losses on the merits of a Section 101 motion.  *See eDekka*

at *19 (This Court does not view every plaintiff's loss as an automatic indicator that the case is

exceptional. A finding of exceptionality is something that this Court arrives at reluctantly, lest we unintentionally narrow the public's access to the courts by chilling future decisions to seek redress for a case in which success is not guaranteed.") This is not the case where a plaintiff adjudicated and lost a case on the merits that was "not guaranteed". *See id*. This is the case where the plaintiff refuses to adjudicate on the merits because he knows a loss is guaranteed.

Further, RCDI appears to be intentionally deceiving this Court. For example, in its Complaint, RCDI states, "Plaintiff is a Texas limited liability company with its principal office located at 1400 Preston Road, Suite 400, Plano, Texas 75093." (D.I. 1, ¶3.) Two things are notable about this statement. First, it appears to be a misrepresentation. Second, it's a carefully crafted misrepresentation.

First, 1400 Preston Road, Suite 400, is the address for the Meridian Business Center in Plano, Texas, but there is no "Suite 400" at the Meridian. (Lamkin Decl. ¶14, Exhs F-G, Meridian Floor Plan.) (*Id*.) It appears likely that RCDI merely employs a virtual mailbox service from the Meridian Business Center in Plano, Texas.[3] (Lamkin Decl., ¶¶15-16.)

Further, Leigh Rothschild is the agent for service of process and the sole member of RCDI. (Lamkin Decl., ¶¶17-18, Exhs H-I.) But Rothschild resides in Florida, not Texas, and manages RCDI from Florida, not Texas, as he explained in a recent declaration in another RCDI matter wherein he attempts to avoid transfer from Florida:

- "I am the sole member of Rothschild Connected Devices Innovations, LLC ("RCDI"), a Texas limited liability company. Since its inception I have been RCDI's sole member."

---

[3] It is also possible that RCDI has an office but receives mail at the Suite 400 address. Garmin sent an email to RCDI asking whether RCDI had an office at the Meridian Executive Offices, or any other location in Texas, but, again, RCDI did not respond. (Lamkin Decl., ¶16.)

- "I manage RCDI's affairs from Miami-Dade County."

- "All of the documents and files that RCDI maintains and that are relevant to this lawsuit . . . are located in Miami, Florida."

(Lamkin Decl. Exh I, Declaration of Leigh Rothschild ¶¶7, 9-10.)

RCDI, contra to its statement in paragraph 3 of its Complaint, appears to have no office in Plano, Texas.

Secondly, paragraph 3 of the Complaint in this matter doesn't employ the standard (and arguably requisite) term "principle place of business" but instead the term "principle office." With high probability, RCDI employs the vaguer term "principle office" as it allows RCDI to imply that its principle place of business is in Plano without using the legally significant and demonstrably false term, "principle place of business". This wordsmithing smacks of intentionality.[4]

And unfortunately for RCDI, "principal office" also has a meaning under Texas law, and RCDI does not meet it.  *See Bergfeld v. Campbell*, 367 S.W.2d 364, 367 (Tex. Civ. App. Texarkana 1963) ("The principal office of the corporation * * * is the place where the principal affairs, business and otherwise * * * are transacted, and where the officers and agents of the company are expected to be in the performance of their duties * * * during office hours") (*quoting Bozeman v. Arlington Heights Sanitarium*, Tex.Civ.App., 134 S.W.2d 350) (ellipses in the original).  Thus, even the use of the more vague term "principal office" is a misrepresentation

---

[4] In *Iris Connex*, this Court addressed whether Plaintiff should receive sanctions for stating that its "principal office" was in Longview Texas when it was not.  S*ee Iris Connex*, *62n.13. This Court declined to sanction Iris Connex for said fact because, *inter alia*, defense counsel had made a significant error in their characterization of that argument.  *Id.*  Here, as this Motion lays out, the facts are different, and hopefully the undersigned has not errored in its characterization of the sanctionable conduct.

because Rothschild—the sole owner, manager, and agent for RCDI—manages RCDI's affairs from Florida.  (Lamkin Decl. Exh I, Declaration of Leigh Rothschild ¶¶7, 9-10.)  These misrepresentations are sanctionable conduct "in direct defiance of the sanctioning court."  *See Maxxam*, at 591 (sanctions warranted where "bad-faith conduct, beyond that occurring in trial, is in direct defiance of the sanctioning court.").

Further, in other Rothschild-entity matters before this Court, the Rothschild entity does state in its complaint that its "principle place of business" is Suite 400.  (Lamkin Decl., Exhs. J-K.)  This too is demonstrably false based on Rothschild's declaration. *See Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) ("a 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities."); *see also Iris Connex*, \*62n.13[5] (*citing* same).

Moreover, it is also likely that the statement, "Plaintiff is a Texas limited liability company" is also based on a falsehood.  Unless Leigh Rothschild is both a citizen of Texas and a citizen of Florida, Rothschild misrepresented his status to the Texas Secretary of State when he incorporated RCDI in Texas.  (Lamkin Decl., ¶17, Exh H.)  The agent for service of process of a Texas limited liability corporation has to be a Texas resident.  Tex.Bus.Orgs.Code § 5.201(b)(2)(A)(i).  Knowing this, when Rothschild filed the Certificate of Formation for RCDI with the Texas Secretary of State, he stated that he was a Texas resident.  (Lamkin Decl., ¶17, Exh H.)  Unless Rothschild has dual citizenship, that also appears to be false.

To be perfectly clear, patent monetization is perfectly legal, as is the creation of limited liability corporations.  Garmin is not questioning those broad business decisions.  What is and should be scrutinized is the setting up of shell corporations by false representations in order to

---

[5] *See* Note 2, *supra*.

repeatedly assert weak patents for nuisance value settlements.[6]  In particular where, as here, a defendant provides to plaintiff a full letter brief explaining its Section 101 positions and asks to be dismissed from the matter, repeatedly, only to be met by silence.  Defendant is then forced to spend resources to draft and prepare for filing a Section 101 motion, only to be dismissed, without explanation, moments before said motion is made public.  RCDI forwent its $75,000 dollar settlement in order to secret Garmin's Section 101 motion because RCDI knows its patents are patent ineligible.  And yet the graft continues.

## IV.   ARGUMENT

### A.  Reasonable Attorney's Fees, Or In The Alternative, Limited Discovery Is Appropriate On These Facts

In general, where the dismissal is in good faith, attorney's fees should not be granted upon a voluntary dismissal.  *Ascend Geo, LLC v. Oyo Geospace Corp.*, No. H-09-2886, 2011 U.S. Dist. LEXIS 24665, at *5-6 (S.D. Tex. Mar. 10, 2011) (*citing Larchmont Eng'g, Inc. v. Toggenburg Ski Ctr., Inc.*, 444 F.2d 490, 491 (2d Cir. 1971) ("holding that voluntary dismissal of claims may be good faith decision to minimize litigation expenses and 'should not be discouraged by the threat of imposing attorney fees'").  This is sound policy (encouraging voluntary dismissal) and Garmin agrees with the policy, where the dismissal is in good faith.  *See id*.  However, where—as here—the only reasonable conclusion to be drawn is that dismissal was done in bad faith, attorney's fees are appropriate.  Facts supporting bad faith include:

---

[6] And, one has to ask why Inventor Leigh Rothschild creates shell companies such as RCDI. RCDI only has one owner, Leigh Rothschild.  As such, he could hire counsel and file patent infringement actions as the Inventor.  See Iris Connex at *67 ("There are, of course, other ways to accomplish the same result without the use of multiple corporate shells. For example, Mr. Yates, an experienced patent litigator, could have represented each inventor directly.")  If his cases ever actually went to trial, a jury might look more favorably upon an individual inventor than a corporate shell.  But these are not cases intended for the courtroom, they are cases filed for the collection of nuisance payments (here, an offer of $75,000 before the negotiations even started).   Such is not the purpose of the patent laws and not the purpose of this Court.

1. The filing of 69 patent litigations with none proceeding to the merits, none proceeding to claim construction, and most—by a long shot—never making it past the pleadings stage;

2. Making an unsolicited, initial offer of $75,000 to settle, well below the cost of litigation, and made before any discussion of sales, royalty, or other legitimizing facts;

3. Knowing misrepresentations to this Court, the Honorable Robert W. Schroeder, III, and the Texas Secretary of State;

4. Refusal to meet and confer in good faith weeks before the filing of a Section 101 motion, contra to this Court's Section 101 Standing Order;

5. The unceremonious dismissal of Garmin moments before the filing of its Section 101 motion in order to keep said motion secreted; and

6. The continued assertion of patents known to be invalid (*i.e.*, upon information and belief, RCDI has filed patent litigations after dismissing other defendants upon the successful demonstration of the asserted patents' invalidity or ineligibility.  That is, RCDI is asserting patents it believes to be invalid).

Garmin respectfully believes these facts are sufficient to garner the award of reasonable attorney's fees.  Should this Court not agree that these facts rise to the level of bad faith conduct, Garmin respectfully asks this Court to grant limited discovery so that Garmin can ascertain whether RCDI has dismissed other defendants when faced with strong invalidity arguments (including Section 101 motions).   That is, should this Court not believe the above facts are sufficient to grant attorney's fees, Garmin respectfully requests an Order mandating that RCDI produce to Garmin all communications from defendants wherein any defendant has provided to RCDI an invalidity or ineligibility analysis, and RCDI has subsequently dismissed said defendant without any payment of fees, license, or royalties.  Garmin will review said materials

and if, as Garmin suspects, RCDI has a pattern of dismissing defendants upon the making of sound invalidity/ineligibility arguments but continues to assert its know-known-to-be-invalid, patent claims, Garmin will move this Court again for attorney's fees on that basis.

In the alternative, should this Court believe production of the above described invalidity communications to Garmin be inappropriate, Garmin respectfully asks that any such communications be presented to this Court by RCDI for in camera review.  *See eDekka* at *17 ("Dekka's litigation history in this District—which includes filing strikingly similar lawsuits against over 200 defendants—reflects an aggressive strategy that avoids testing its case on the merits and instead aims for early settlements falling at or below the cost of defense. Based upon the record of the above-captioned cases, as well as the Court's in camera review of eDekka's '674 Patent settlements to date, the Court finds a pattern of defendants that agreed to settlements at relatively early points in the litigation for amounts significantly below the cost of taking a patent case to trial.")

### B.  An Order Mandating The Service Of Any Order Upon This Motion Is Appropriate

Finally, regardless of this Court's findings on the above two requests, Garmin asks this Court for an Order that either Plaintiff RCDI or Leigh Rothschild serve this Motion and the Court's Order upon this Motion upon all defendants of any Rothschild-entity complaint employing the "principal office" or "principal place of business" language in any such complaint.  (*See* Lamkin Decl., ¶19, Exh M, listing all Rothschild entities).  Leigh Rothschild, through various shell entities, has filed 394 patent litigations, a great majority of them in this district.  However, the facts suggest that Mr. Rothschild has made possible the filing of said complaints in this district by misrepresenting his residency to the Texas Secretary of State, and his "principle office" or "principle place of business" location before this Court and the court of

the Honorable Robert W. Schroeder, III.  Despite these misrepresentations, defendant after defendant is forced to pay nuisance settlements to Mr. Rothschild.  That should stop.  At least until Mr. Rothschild complies with the requirements of the Texas Secretary of State, this Court, and the Federal Rules of Civil Procedure.

## V.  CONCLUSION

For the reasons stated above, Garmin respectfully moves this Court for the following relief:

1. An award of $20,500.00 dollars in reasonable attorney's fees; or in the alternative

2. An order granting limited discovery as to RCDI's receiving of any previous Section 101 or other invalidity motions, prompting dismissal and/or settlement; and

3. An Order that Plaintiff RCDI serve this Court's Order upon this Motion upon all Rothschild-entity complaints employing the "principal office" or "principal place of business" language in said complaint.

Respectfully Submitted,

*Rachael D. Lamkin*

Rachael D. Lamkin

Counsel for Defendant
Garmin International, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 11th day of April, 2017, a true and accurate copy of the above and foregoing:

### DEFENDANT'S MOTION FOR ATTORNEYS FEES
### AND OTHER RELIEF

Was filed with the Court's CM/ECF system, which provides service to all counsel of record.

*Rachael D. Lamkin*
Rachael D. Lamkin