IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | |
|---|---|
| Rothschild Connected Devices Innovations, LLC<br><br>        Plaintiff,<br><br> vs.<br><br>Garmin International, Inc.<br>        Defendant. | Case No.:  2:17-cv-00158-JRG-RSP<br><br>**DEFENDANT'S REPLY** |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION FOR FEES AND OTHER RELIEF**

Defendant herein respectfully Replies to RCDI's Opposition (D.I. 14.)

1

The evidence before this Court demonstrates that Plaintiff RCDI repeatedly files suits it understands to be ultimately indefensible. Garmin is aware of this Court's admonition against "zeal" in seeking attorney's fees (*Iris Connex, LLC v. Dell, Inc.,* 2017 U.S. Dist. LEXIS 10146, at *62n.13 (E.D. Tex. Jan. 25, 2017)), and Garmin takes this Court's caution seriously. Here, upon careful consideration, Garmin believes sanctions are justified given RCDI's conduct, which includes:

1. The filing of sixty-nine (69) lawsuits, with none proceeding to the merits;
2. against a "plethora of diverse defendants" making products that range from baby monitors to automobiles;
3. offering low-value nuisance settlements early in the case;[1]
4. the unannounced and voluntary dismissal of Garmin where the only rational explanation is that RCDI understands that the Asserted Patents cannot survive an adjudication on the merits; and
5. material misrepresentations before this Court and the Texas Secretary of State.

On those facts alone, Garmin would be justified in seeking the minimal attorney's fees requested here. But RCDI's bad faith conduct surpasses those actions; RCDI is systematically gaming this Court. For example, based on data provided on the first 38 RCDI cases filed, 13 of the first 38 defendants settled their cases for "significantly less than litigation costs". (Lamkin Decl. ¶2, Exh A, p.6.) But the more important fact is that the remaining 20 defendants were dismissed by RCDI without prejudice, that is likely without settlement and without paying any royalty.[2] (Lamkin Decl. ¶3, Exh B.) 34% of defendants in the first 38 RCDI matters were

---

[1] As to the first three bullets, see *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1326-27 (Fed. Cir. 2011).
[2] For these calculations, based on conversations with dismissed entities, Garmin believes that most or all defendants dropped without prejudice paid no monies.

dropped after paying some nuisance-value sum and 63% were dropped after paying a "no value" sum.  This alone is evidence of bad faith litigation.  But RCDI then went on to sue 30 more defendants.

Moreover, in the cases consolidated under No. 15-cv-1431, it appears that 8 of the 9 defendants were dropped under the no-value assessment.  RCDI had so much faith in the merits of their case, it let out at least 89% of the defendants without paying any monies.  To be clear, the voluntary cessation of a lawsuit upon learning that patents may be invalid should be encouraged.  The bad faith conduct arises when a party continues to file lawsuits based on the same patents it now understands to be meritless.  Thirty more times.

In fact, the majority of RCDI's 69 lawsuits have been dismissed without prejudice. (Lamkin Decl. ¶3, Exh B.)  One might expect one or two dismissals without prejudice in 69 suits (due to naming the wrong party, for example) but the majority of RCDI's filings have been dismissed without prejudice.  This alone should be objective evidence of bad faith litigation.

Further, to avoid adjudication on the merits, RCDI has taken many inconsistent positions before this Court.  RCDI has represented to this Court in an opposition to a Section 101 motion that the motion was untimely because claim construction was required.  (Lamkin Decl. ¶6, Exhs E-F.)  But when it came time to file its claim construction brief, RCDI filed a single paragraph brief stating that no claim construction was required.  (*Id*.)  These two statements are in direct conflict and made to avoid adjudication on the merits of a Section 101 motion.  This Court can and should infer bad faith from the taking of two such starkly inconsistent positions.  *See Samsung Elecs. Co. v. NVIDIA Corp.,* 160 F. Supp. 3d 866, 874 (E.D. Va. Dec. 16, 2015).

Citing *RCDI v. Guardian*, No. 2:15-cv-1431 (Order, at 4), RCDI tells this Court, "RCDI has been found to have plausible arguments with respect to Section 101 validity **the only other**

3

**time** that Section 101 validity was raised." (D.I. 14, p.12; emphasis added). Again, RCDI fails to play it straight with this Court; multiple defendants raised a Section 101 challenge in Consolidated Case No. 2:15-cv-01877, and Section 101 challenges have been raised multiple times directly with RCDI. (Lamkin Decl. ¶¶7-12, Exhs G-I.) And RCDI's argument misses the mark. The facts evidencing bad faith litigation conduct are not how many times Section 101 has been raised (answer: many) but how many times RCDI has let those arguments proceed to the merits (answer: never).

Further, in *RCDI v. Guardian*, ADS' effort to combat RCDI's filing of meritless suits is distinguishable from Garmin's. First, ADS asked the Court to wade through a complicated invalidity adjudication as part of its fees motion. (Lamkin Decl. ¶2, Exh A, p.4.) Second, ADS asked this Court to consider the low settlement amounts paid by defendants, as reflected in 13 settlement agreements, as the primary evidence of bad faith. (Lamkin Decl. ¶2, Exh A.) Here Garmin asks this Court to consider (1) that every single settlement appears to have been for nuisance value, (2) RCDI's dismissal of Garmin where all substantive discussion was limited to Section 101 (thus the only plausible explanation for dismissal was the avoidance of a Section 101 motion), (3) multiple misrepresentations before this Court, and (4) that **the majority of RCDI's suits appear to have been dropped upon the paying of no settlement at all**. (Lamkin Decl. ¶3, Exh C.) In fact, counsel for Garmin has personally spoken to counsel for defendants whose clients were dropped upon threat of a Section 101 motion over the telephone. (Lamkin Decl. ¶7.) In the case at bar, counsel for Garmin simply sent a letter threatening an Alice motion, and Garmin was dropped from the case. RCDI is playing "okay you caught me" litigation. And, at the end of the day, RCDI must understand its conduct fell below acceptable levels in *Guardian*, as evidenced by its oral arguments before ADS' appeal of the denial of attorney's fees

4

before the Federal Circuit. For example, when a judge on the Panel asked counsel for RCDI about any RCDI cases pending before this Court, counsel assured the CAFC that "everything has been dispended with." (Lamkin Decl. at ¶¶16-17.) That, again, is not true. (*Id*.)

Finally, RCDI attempts to muddy the water with a host of accusations. First, RCDI claims that Garmin failed to ask for a meet and confer in its initial letter. The letter speaks for itself in its repeated request to speak with RCDI. (D.I. 11-2.)

Second, RCDI claims that Garmin failed to meet and confer prior to filing its fees motion. Under the facts presented in its Motion, Garmin believes it has demonstrated sufficient facts to support a good faith effort to meet and confer. Regardless, the undersigned takes this Court's meet and confer obligations seriously and, on her own, offered to withdraw the fees motion to engage in any further discussions desired by RCDI. RCDI declined. (Lamkin Decl. ¶13, Exhs J-K.)

Third, in its attempt to dodge accountability, RCDI cherry picks the communications between Garmin's counsel and counsel in a second Rothschild suit, *LBS v. Garmin*. Originally the undersigned reached out to counsel for LBS as a professional courtesy as LBS' complaint also contained a misrepresentation. (Lamkin Decl. ¶¶14-15, Exh L.) As RCDI's own exhibit makes clear, Garmin only later brought up the idea of a "horse trade," or settling both cases simultaneously, because Rothschild's misrepresentations were, "upon further investigation," widespread, and as such a universal resolution seemed appropriate. (D.I. 14-7.) The characterization of professional courtesies as something nefarious is unproductive at best.

Fourth, RCDI accuses Garmin of taking it to task for having a virtual office, but Garmin does not object to RCDI's virtual office. Garmin objects to RCDI misrepresenting the nature of its office to this Court and misrepresenting one's residency to the Texas Secretary of State in a

signed declaration.  RCDI tells this Court that "[t]he fact is the location given in the Complaint **is RCDI's only location**. That location is its principle office."  (D.I. 14, p.13; emphasis added.) Those statements are directly contradicted by Rothschild, who declares that RCDI's office is in Florida.[3]  (D.I. 11-10, ¶¶7-10.)  RCDI tells this Court, "the only address for RCDI is that stated in the Complaint."  (D.I. 14, p.14.)  That statement is directly contradicted by current information on the Texas Secretary of State's website, which states that the "Manager" and "Management" of RCDI are located at 1574 N.E. Quayside Terrace, Miami, Florida.  (Lamkin Decl. ¶18, Exh M.)

    These are not nit-picky disputes.  Rothschild's use of an unoccupied office and his acting as his own Agent for Service of Process has allowed Rothschild to sue defendants in this Court on behalf of "Texas entities" that don't in fact exist.  For example, Rothschild sued 8 defendants on behalf of Texas Patent Imaging, LLC, an entity purported to be located at the same "principal office" as RCDI in this matter, but there is no Texas limited liability company called "Texas Patent Imaging, LLC".  (Lamkin Decl. ¶¶14-15, Exh N; Consolidated Case No. 2:16-cv-358.) Eight entities were sued by Rothschild under an entity that doesn't exist using the same fictions perpetrated on Garmin.  And consistent with RCDI, the great majority of those cases were dismissed without prejudice.

    Further, in his declaration in this matter—a declaration that bears striking resemblance to the other declarations Mr. Rothschild has had to file to avoid sanctions over the asserted patents—Mr. Rothschild tells this Court, "Unbeknownst to me prior to my review of Garmin's

---

[3] It is true that Rothschild doesn't use the word "office" in his declaration but any attempt to characterize a declaration where Rothschild "manages RCDI's affairs" including all RCDI documents from his Florida address as a non-office should be seen as playing cute with the Court.

6

motion for fees, the registered agent of a Texas LLC must be a Texas resident." (D.I. 14-5, ¶18.) But Rothschild doesn't deny signing the document—which contains the resident requirement on its face—a document Rothschild has had to sign many, many times, for each of the Rothschild-created entities that have appeared before this Court wherein Rothschild appeared as the Agent for Service of Process. These are not "administrative errors" but orchestrated fictions.

Finally, RCDI spends much of its Opposition discussing whether Garmin's Motion can satisfy Section 285. (D.I. 14, pps. 8-14.) But, Garmin did not seek fees under Section 285. As Garmin's Motion expressly states, Garmin seeks sanctions under this Court's inherent authority, authority that "allows the Court to address 'a full range of litigation abuses' including conduct beyond the confines of this case." (Garmin's Motion, D.I. 14, p.4., *citing Iris Connex*, LLC v. Dell, Inc., 2017 U.S. Dist. LEXIS 10146 (E.D. Tex. Jan. 25, 2017) (*quoting Chambers v. NASCO, Inc*., 501 U.S. 32, 44, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)).

Given the above, Garmin respectfully asks this Court: (1) for reasonable attorney's fees, and/or (2) to allow Garmin to seek limited discovery of RCDI to garner the extent of dismissals due to invalidity challenges and supplement this Motion upon any substantial new evidence, and/or (3) an Order mandating that RCDI serve this Court's Order upon Garmin's Motion upon all future RCDI defendants.[4]

To be clear, Garmin is not asking for a general rule stating that whenever a plaintiff files multiple suits such an order is warranted. But, on these facts, such measures should be deemed appropriate. Otherwise there is no disincentive, plaintiffs can simply file dozens of meritless suits, dismissing any party at the whiff of a merits challenge, in perpetuity.

---

[4] Garmin has modified this final request to "all" future defendants given the scope of RCDI's conduct.

                                                Respectfully Submitted,

                                                *Rachael D. Lamkin*
                                                Rachael D. Lamkin

                                                Counsel for Defendant
                                                Garmin International, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of April, 2017, a true and accurate copy of the above and foregoing:

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS FEES AND OTHER RELIEF**

Was filed with the Court's CM/ECF system, which provides service to all counsel of record.

                                                *Rachael D. Lamkin*
                                                Rachael D. Lamkin