# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| ROTHSCHILD CONNECTED DEVICES INNOVATIONS, LLC, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | No. 2:17-CV-00158-JRG-RSP |
| GARMIN INTERNATIONAL, INC., | § § § | |
| Defendant. | § | |

## **MEMORANDUM OPINION**

The Court now considers Garmin International, Inc.'s Motion for Attorney's Fees and Other Relief [Dkt. # 11]. For the following reasons, the Court will **DENY** the motion.

### I. BACKGROUND

This lawsuit started in February 2017, when Rothschild filed a complaint for infringement of U.S. Patents 7,899,713 and 8,788,090. Although the '713 Patent has only recently been litigated, the '090 Patent has been the subject of frequent litigation since 2015. Rothschild Decl. (May 9, 2016) [Dkt. # 14-5] ¶ 6 ("[T]his is the first time that the '713 Patent has been asserted."); Docket Navigator Screenshot [Dkt. # 11-5] (reflecting that Rothschild has filed 69 cases asserting the '090 Patent).

On March 15, Garmin's counsel (Rachel Lamkin), wrongly believing Garmin had been served, asked Rothschild's attorney (Jay Johnson) for an extension of time to answer. Lamkin Email (Mar. 15, 2017) [Dkt. # 14-2] at 5. Johnson granted the request and advised

Lamkin of Rothschild's "early settlement program," which would resolve the lawsuit for a one-time payment of $75,000. Johnson Email (Mar. 15, 2017) [Dkt. # 11-6] at 4.

On March 21, Lamkin sent Johnson her analysis of the '090 Patent, which concluded at least Claim 1 was invalid under 35 U.S.C. § 101. Lamkin Letter [Dkt. # 11-2]; Lamkin Decl. (Apr. 11, 2017) [Dkt. # 11-1] ¶ 2. Based on that analysis, Garmin asked Rothschild to dismiss the case given it "ha[d] no reasonable chance of success on the merits of a Section 101 motion." Lamkin Letter [Dkt. # 11-2]. Rothschild did not respond.

Over the next few weeks, Lamkin sent additional emails concerning her analysis. On March 28, Lamkin asked whether Johnson had reviewed her letter, Lamkin Email (Mar. 28, 2017) [Dkt. 14-2] at 2, but Johnson did not respond. On April 3, Lamkin first alluded to a forthcoming § 101 motion but was vague as to timing:

> As you know, Judge Gilstrap requires that we meet an[d] confer regarding any Alice motion. Thus far you have chosen to ignore my communications on this subject, which is contra to Judge Gilstrap's Section 101 standing order. Thus, please, today, engage in a good faith meet and confer with me on this matter. Judge Gilstrap prefers that we speak over the phone so please set forth your availability today. If you would instead prefer to communicate in writing, please—today—set forth your response to my letter, including any claim terms you believe need construction, and the constructions therefore.

*Id.* at 2. Rothschild still did not respond. Finally, on April 4, Lamkin wrote:

> I will be filing the Alice motion at 5:00 (CT) EDTX time today. Given your silence, I will assume that you agree that no claim construction is needed for the Court to adjudicate an Alice motion. To the extent that you do believe claim construction is needed, please send a list of the terms you believe need construction and your proposed construction before 5:00 CT.

*Id.* at 1–2.

> Johnson responded:
>
> > It is my understanding that you and Garmin in-house counsel have both been in communication with Neal Massand on a related case and Neal is anticipating a counteroffer from Garmin that will resolve both that case and this case. Given those discussions, and that we have not yet served the complaint in our case, it does not make sense to be talking about a 101 motion or a meet and confer on that issue. Nevertheless, if you insist on filing a 101 motion, then RCDI's position is that claim construction is needed (such that the parties presumably disagree on that issue). I believe that is sufficient for the required meet and confer. We will identify which claim elements need construction and why (and identify intrinsic references for support) in connection with the joint submission required within 10 days after filing of the 101 motion.

*Id.* at 1. Lamkin replied that, "[a]s to Garmin not being served, you filed a summons on March 1 and granted an extension to April 6 . . . so [I] now have a court set deadline for a responsive pleading." *Id.* Johnson and Lamkin later discussed the motion by phone, and Lamkin told Johnson that Garmin might have mistook whether it was served in this case or another case. Johnson Decl. (May 9, 2017) [Dkt. # 14-1] ¶ 11.

Later that day, Rothschild moved to dismiss Garmin without prejudice. Mot. to Dismiss [Dkt. # 7]. The Court granted the motion on April 9. Order [Dkt. # 8]. Garmin never filed its § 101 motion.

Garmin then raised the subject of its fees for analyzing the '090 Patent and preparing a motion to dismiss:

> We are contemplating a motion for attorney's fees in your case and one of the facts we think weighs in favor of attorney's fees is, we believe, a misrepresentation in your Complaint. Paragraph 3 states that RCDI has an

> office at 1400 Preston Road, Suite 400, but there is no Suite 400 at that address. See attached floor plan. I telephoned the Executive Office Suites and they confirm that there is no Suite 400 at the Preston Road facility. The virtual services manager told me that Suite 400 is used for entities paying for virtual mail service.
>
> That said, motions for attorney's fees are serious and we would like to extend every courtesy before filing. As such, please advise whether paragraph 3 could be correct in spirit if not in letter. Please confirm whether your client has an actual office at 1400 Preston Road, and the number of that office. If your client has an office or home address other than that address in Texas, please so advise.

Lamkin Email (Apr. 10, 2017) [Dkt. # 14-4]. Rothschild did not respond, and Garmin filed the present motion the next day.

Garmin now argues the Court can and should exercise its inherent authority to award attorney's fees because of Rothschild's bad-faith conduct.

## II. APPLICABLE LAW

A federal court, acting under its inherent authority, may impose sanctions against litigants or lawyers appearing before the court so long as the court makes a specific finding that they engaged in bad-faith conduct. *See Elliott v. Tilton*, 64 F.3d 213, 217 (5th Cir. 1995) (citing *Resolution Trust Corp. v. Bright*, 6 F.3d 336, 340 (5th Cir. 1993), and *In re Thalheim,* 853 F.2d 383, 389 (5th Cir. 1988)); *see also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765–66 (1980). This authority, for example, includes the power to vacate its own judgment if a party or lawyer has perpetrated fraud on the court, the power to punish for contempt, and the power to control admission to its bar and discipline attorneys who appear before it. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991)).

But a court's inherent authority is not unbounded and must be exercised with restraint and discretion. *See Roadway Express*, 447 U.S. at 764. A court's inherent authority "is not a broad reservoir of power, ready at an imperial hand, but a limited source; an implied power squeezed from the need to make the court function." *FDIC v. Maxxam, Inc.*, 523 F.3d 566, 591 (5th Cir. 2008) (quoting *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 894 F.2d 696, 702 (5th Cir. 1990)). This power "may be exercised only if essential to preserve the authority of the court." *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996); *see also Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 460 (5th Cir. 2010); *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 378 (Fed. Cir. 1994) ("Without a finding of fraud or bad faith whereby the 'very temple of justice has been defiled,' a court enjoys no discretion to employ inherent powers to impose sanctions.").

## III.  DISCUSSION

Garmin contends Rothschild's bad-faith conduct justifies sanctions under the Court's inherent authority. Garmin's Mot. [Dkt. # 11] at 11–13. Such bad-faith conduct, says Garmin, is supported by six "facts":

(1) Rothschild has filed 69 patent lawsuits concerning the '090 Patent, but none have reached claim construction, and most never pass the pleadings stage.

(2) Rothschild made an early $75,000 settlement offer before any discussion of sales, royalty, or other legitimizing facts.

(3) Rothschild misrepresented to the Court it has a principal place of business in Plano, and misrepresented to the State of Texas that its registered agent is a Texas resident. *See generally* Garmin's Mot. [Dkt. # 1] at 8–11.

(4) Rothschild refused to meet and confer in good faith before the filing of a § 101 motion.

(5) Rothschild dismissed Garmin just before Garmin intended to file its § 101 motion in order to keep the motion from being filed.

(6) Rothschild regularly asserts patents it knows to be invalid.

*Id.* at 12.

As to (1) and (2), these facts are relevant to a determination of exceptionality under § 285, *see Rothschild Connected Devices Innovations, LLC v. Guardian Protection Servs., Inc.*, 858 F.3d 1383, 1389–90 (Fed. Cir. 2017) (concluding the court misjudged Rothschild's conduct in other litigation and that because of "the absence of evidence demonstrating that Rothschild engaged in reasonable conduct before the District Court, the undisputed evidence regarding Rothschild's vexatious litigation warrants an affirmative exceptional case finding [under 35 U.S.C. § 285]"), but they are not facts requiring use of the Court's inherent powers. Even if Rothschild's position on the merits was weak, there is no evidence Rothschild filed the lawsuit for reasons other than patent litigation. *See, e.g.*, *In re Yorkshire, LLC*, 540 F.3d 328 (5th Cir. 2008) (affirming sanctions under the court's inherent authority where a party instituted bankruptcy proceedings because he became dissatisfied with his available remedies and used judicial process to inflict injury on others with no meaningful thought given to the actual purposes of the proceedings).

As to (3), while fraud on the Court might justify use of the Court's inherent authority, even if Rothschild's misrepresentations were intentional, Garmin does not show how they materially impacted its position in this lawsuit or eroded the authority of the court.

Concerning (4) and (5), the apparent misunderstanding by Garmin that it had been served, and was therefore under a deadline, mitigates the impact of these facts. In reality, Garmin was not under a deadline, and it was not unreasonable for Rothschild to conclude there was no urgent need to address Lamkin's letter on the quick timeframe she expected.

Also, Garmin gave Rothschild no meaningful notice of its intent to file a § 101 motion. Although Lamkin's April 3 email implied such a motion was on the horizon, it mentioned no date by when Garmin intended to file the motion. Once Rothschild realized the short time-frame on which Garmin was operating, Rothschild questioned the need to act so abruptly. While the Court does not fault Garmin for wanting quick resolution, the record does not show Rothschild was intentionally delaying a conference with Garmin for some strategic advantage.

As to (6), there is no evidence Rothschild knew the '090 Patent was invalid. Moreover, Lamkin did not specifically address the claims of the '713 Patent in her letter. Thus, even if Rothschild conceded Garmin's § 101 arguments and dismissed the '090 Patent-related claims, Garmin makes no convincing argument as to why Rothschild should have been expected to dismiss the entire case.

Garmin understandably points to *Rothschild Connected Devices Innovations, LLC v. Guardian Protection Services, Inc.*, 858 F.3d 1383 (Fed. Cir. 2017) for support, Def.'s Notice of Supp. & Controlling Authority [Dkt. # 19], but that case is distinguishable for a number of reasons. Foremost, *Rothschild* concerns an exceptional-case analysis under 35 U.S.C. § 285, which applies a different standard. Moreover, the Federal Circuit's opinion

hinged on Rothschild's refusal to consider prior art proffered by Guardian along with incongruent statements made by Rothschild and its counsel. *Rothschild*, 858 F.3d at 1388–89. The record here, however, contains no such prior art, allegedly incongruent related statements, or evidence of willful blindness as to § 101 invalidity.

As a final matter, Garmin's motion should also be denied because Garmin failed to first meet and confer, in good faith, about the motion. *See* L.R. CV-7(h) (requiring "at a minimum, a personal conference, by telephone or in person, between an attorney for the movant and an attorney for the non-movant. . . . In the personal conference, the participants must give each other the opportunity to express his or her views concerning the disputes"). "Good faith requires honesty in one's purpose to discuss meaningfully the dispute . . . . For opposed motions, correspondence, e-mails, and facsimile transmissions do not constitute compliance with the substantive component and are not evidence of good faith." *Id.*

Here, Garmin initially filed the motion without a Certificate of Conference. Def.'s Motion [Dkt. # 10]. After the District Clerk rejected the filing as deficient, Garmin refiled the motion with a Certificate directed mainly to counsels' discussions concerning the never-filed § 101 motion. Def.'s Motion [Dkt. # 11] at 16–18. Although the Certificate refers to Lamkin's "attorney's fees" email the previous day, (1) email does not satisfy the our local rules; (2) the referred-to email only indicates the *possibility* of filing the present motion; (3) the email was limited to only one aspect of Garmin's motion (the address of Rothschild's principle office); and (4) one day is not a sufficient time to conclude Roth-

schild's counsel was avoiding a conference. Thus, the record lacks any evidence of a meaningful discussion—or attempts by Garmin at a meaningful discussion—concerning the merits of the present motion. For that reason alone, the motion should be denied.

IV. **CONCLUSION**

The Court does not find an exercise of its inherent powers is essential to preserve its authority in this case. Rothschild did not violate an outstanding order. Nor did Rothschild somehow "defile the temple of justice." Moreover, Garmin failed to comply with our local rules concerning the filing of its motion. As such, the Court concludes judicial restraint is the better approach on these facts, and therefore **DENIES** the motion.

**SIGNED this 1st day of December, 2017.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE